■ ARA MISAKYAN, Appellant, v MARY MISAKYAN, Respondent.—Casey, J. Appeal from an order of the Supreme Court at Special Term (Lee, Jr., J.), entered September 24, 1985 in Broome County, which granted defendant's motion to find plaintiff in contempt of court.

Plaintiff was held in contempt of an order entered in the pending matrimonial action, which required plaintiff to provide defendant with access to the marital abode for the purpose of removing her personal belongings, including jewelry. It is undisputed that plaintiff permitted access to the marital abode, but defendant was unable to locate several items of jewelry. Defendant's motion to find plaintiff in violation of the order and in contempt of court resulted in a hearing at which plaintiff denied the existence of most of the jewelry, while defendant, her son and two family friends testified to its existence and value. Defendant and her son also testified that the jewelry was located in a safe in the marital abode at the time defendant moved out. Additional testimony was presented by defendant establishing that plaintiff had made certain statements indicating his intent to deprive defendant of some or all of the jewelry.

Special Term found that the jewelry existed and that it remained in plaintiff's possession and control after defendant moved out of the marital residence. Based upon these findings and the evidence as to plaintiff's intent to keep the jewelry

from defendant, Special Term concluded that plaintiff violated the court order directing him to give defendant access to the jewelry, found plaintiff in contempt of court and gave him 10 days to purge himself of the contempt by delivering the jewelry to defendant. We reverse the order of contempt. "In order to find that contempt has occurred in a given case, it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect. It must appear, with reasonable certainty, that the order has been disobeyed * * * Moreover, the party to be held in contempt must have had knowledge of the court's order" *(Matter of McCormick v Axelrod,* 59 NY2d 574, 583).

When Special Term issued the order directing plaintiff to provide defendant with access to the marital home so that she could remove her personal belongings, the court made no finding that the jewelry at issue was actually in the marital home or that plaintiff otherwise had possession and control of the jewelry. Although the proof at the subsequent hearing on defendant's contempt motion supports a finding that the jewelry was in the marital home when defendant moved out, there is no proof that plaintiff still had possession and control some three months later when the court issued its order directing plaintiff to provide access to the jewelry. Had plaintiff disposed of the jewelry during the period following defendant's move from the marital home and prior to defendant's motion for an order directing plaintiff to provide access to the jewelry, plaintiff obviously could not have complied with the order. While such conduct might constitute conversion or other wrongful act, it cannot serve as the basis for a finding of contempt with respect to an order not yet issued by the court. At this stage of the proceedings, and upon the proof in this record, it does not appear with reasonable certainty that plaintiff disobeyed the court's order.

Order reversed, on the law and the facts, without costs, and motion denied. Mahoney, P. J., Main, Casey and Harvey, JJ., concur.

Mikoll, J., dissents in a memorandum. Mikoll, J. (dissenting). I respectfully dissent. The actions of plaintiff constitute a violation of the court's order which provided defendant with access to the marital abode for the purpose of removing her jewelry.

In order to find contempt, it must appear with reasonable certainty that a lawful order of the court, which clearly expresses an unequivocal mandate, has been disobeyed *(Matter of McCormick v Axelrod,* 59 NY2d 574, 583). The evidence

before Special Term met the standard of proof required in such a case, that is, proof by "clear and convincing evidence" *(Bulow v Bulow*, 121 AD2d 423, 424).

The record indicates that defendant possessed 18 pieces of precious and semiprecious jewelry which were in the safe in the family residence when she departed therefrom. Plaintiff was in possession of the key to the safe. Plaintiff denied defendant access to the residence and to defendant's personal belongings by changing the door locks of the family home. This action precipitated the issuance of a court order which provided:

"that the defendant, MARY MISAKYAN, shall have access to the marital home located at 84 Aldrich Street, Binghamton, New York and the plaintiff, ARA MISAKYAN, is directed not to interfere with said access, and MARY MISAKYAN shall have the right to remove therefrom all of her personal clothing, her jewelry, her personal papers, including citizenship papers, passport, and power of attorney, and it is further

"ORDERED that the defendant, MARY MISAKYAN, shall have the right to the assistance of a peace officer to accomplish same if the plaintiff, ARA MISAKYAN, interferes in any way in said removal or in the event he refuses entrance to the premises."

Defendant went to the residence in the company of the parties' son and a police officer to reclaim her things. Plaintiff, at defendant's request, gave defendant the key to the safe. Upon opening it, defendant found that her jewelry was missing except for a gold cross. Her son also found one of her rings secreted in the attic. It was one of the pieces which had previously been in the safe when she left her home.

Plaintiff refused defendant permission to go into the cellar in further search of her jewelry. It is significant to note that plaintiff denied the very existence of the jewelry. These incredible denials were totally refuted by his own prior statements, both oral and written, by the testimony of the parties' son and personal friends, and by photographs verifying the existence of the jewelry.

Plaintiff asserts on appeal that the lack of any specific directive in the court's order for plaintiff to turn over the jewelry to defendant precluded its enforcement of the order because the terms thereof were not clear and explicit. Plaintiff attempts to base his argument on specious semantics. Plaintiff was ordered to provide defendant access to the family residence for the purpose of removing her jewelry.

Allowing her simply to enter the home and to find what she might does not comply with the court's order. The hearing demonstrated that defendant had control and sole access to the safe in which the jewelry was stored. By his acts in making the jewelry unavailable, he intentionally denied defendant access for the purpose of claiming her jewelry, in clear violation of the court's express order.

I find the majority's position that no finding of contempt could be made, absent proof that the jewelry was actually in the home when the order was issued, an unrealistic if not impossible burden on a litigant seeking the court's protection from a spouse who takes matters into his own hands in the trying period of a marital breakup.

The evidence at the hearing clearly demonstrated that the jewelry existed, that it was in the safe of the marital home when defendant left, and that plaintiff had exclusive control of the safe and its key. It matters not that the jewelry may have been moved when the order was signed. It was patently clear that the import of the court's order was that plaintiff was to make the jewelry available to defendant. Plaintiff's testimony at the contempt proceeding gives no support to the majority's speculative observation that plaintiff's compliance might not have been possible because the jewelry may have been disposed of previously. If this were so, the contempt proceeding was the proper vehicle for plaintiff to purge himself of contempt by an explanation to that effect. Instead, plaintiff chose adamantly to deny the existence of the jewelry in the face of undeniable evidence to the contrary. This conduct indicates an intentional violation of the order.

Special Term had the advantage of evaluating the testimony of witnesses first hand. We should not disturb the credibility assessment of the court (see, Moffatt v Arlen Realty Mgt., 109 AD2d 934, 935).

We have held that "[i]n a civil contempt proceeding the court must find that the person's conduct was calculated to, or actually did, defeat, impair, impede, or prejudice the rights or remedies of a party to a civil action" (Matter of Cramer Bowling v Cramer, 38 AD2d 774). A recital to that effect is necessary for an adjudication of contempt (Oppenheimer v Oscar Shoes, 111 AD2d 28, 29). Since no such recital appears in Special Term's decision or its order, the matter should be remitted to Supreme Court for further proceedings to remedy this defect.